**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TRANSVERSE, LLC** | § | |
| | § | |
| **VS.** | § | **A-10-CV-517-LY** |
| | § | |
| **IOWA WIRELESS SERVICES, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 393);

Plaintiff's Motion for Leave to Amend its Complaint to Make Clear It Seeks Attorneys' Fees Under

Contracts (Dkt. No. 394); IWS's Application for Attorneys' Fees and Costs (Dkt. No. 395); and all

associated Responses and Replies. The undersigned submits this Report and Recommendation to

the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the

Local Court Rules.

**I. BACKGROUND**

Iowa Wireless Services, a wireless telephone services provider, hired Transverse, a software

development company, to develop customized billing software. Transverse and IWS entered into

two agreements: a "Contract for the Supply of: blee(p) Customer Care and Billing System" under

which Transverse was to develop software for IWS; and a mutual Non-Disclosure Agreement dated

March 3, 2009, under which IWS agreed to maintain the confidentiality of certain proprietary

information of Transverse.

The parties' relationship broke down, and Transverse sued in Texas state court asserting IWS

breached both the Supply Contract and the NDA, as well as tort claims for misappropriation of trade

secrets, conversion, and violation of the Texas Theft Liability Act. On July 9, 2010, IWS removed to federal court on the basis of diversity and countersued for breach of the Supply Contract. The claims related to the breach of the Supply Contract were tried to a jury and the remaining claims[1] were tried to the bench.

The jury found in favor of Transverse, determining that IWS breached the Supply Contract both by wrongfully terminating it and by violating an express prohibition to not give "a competitor access to the Service." The jury awarded Transverse lost profit damages, reliance damages, and lost value damages for the "access to the Service" breach. However, the district court set aside the award for the "access to the Service" breach because it determined that it was not supported by legally sufficient evidence. The district court also ruled against Transverse on its tort claims and on its claim for breach of the NDA. The Final Judgment, awarding Transverse in excess of $11 million in damages, was entered by the district court on September 30, 2013. Dkt. No. 305. On October 15, 2013, both parties separately moved for attorneys' fees, arguing that Texas law applied, and that each was entitled to fees pursuant to Texas Civil Practice and Remedies Code § 38 .001 *et seq.* Dkt. Nos. 306 & 308. Transverse argued that it was entitled to fees because it prevailed on its Supply Contract claims, and IWS argued that it was entitled to fees because it successfully defended the NDA claim, and the tort claims were "subsumed under" the defense of that claim. Upon motion, the district court stayed execution of its judgment, Dkt. No. 321, and once the parties appealed, Dkt. No. 323, dismissed without prejudice the competing motions for attorneys' fees. Dkt. No. 324.

The parties cross-appealed. In *Transverse I,* the Fifth Circuit panel affirmed in part, reversed and rendered in part, vacated in part, and remanded. The panel held that: 1) IWS did breach the

---

[1]The NDA contained a jury waiver provision.

Supply Contract by wrongfully terminating but not by providing "access to the Service" to a competitor; 2) the district court should not have permitted Transverse to recover lost profits for a twelve-year period for the breach of the Supply Contract claim; 3) Transverse could not recover both lost profits and reliance damages for the same breach; and 4) IWS did breach the non-disclosure agreement. *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 617 Fed. Appx. 272 (5th Cir. 2015). The court clarified to the district court the issues remaining on remand:

> the proper amount and type of damages that Transverse may collect on its breach-by-termination claim; the amount of damages, if any, that Transverse may collect for IWS's breach of the [non-disclosure agreement]; and whether IWS is liable under any of the tort theories pressed by Transverse.

617 Fed. Appx. at 282.

On remand, the district court held a bench trial. Dkt. No. 355. This go around, Transverse elected reliance damages instead of lost profits, and the district court awarded Transverse $1.7 million in reliance damages for IWS's breach of the Supply Contract and determined that Transverse had "no cognizable damages" for IWS's breach of the non-disclosure agreement "as a matter of law." Dkt. No. 358 at 7. Having determined that IWS's conduct resulted in no lost value to Transverse, the district court also rejected Transverse's misappropriation of trade secrets, conversion, and Texas Theft Liability Act claims. *Id.* at 7-9. The district court ordered that IWS take nothing on its counterclaim for breach of the Supply Contract and that Transverse take nothing on its claims against IWS for breach of the NDA. The district court also found, regarding attorneys' fees and costs: 1) IWS was not a prevailing party under the Texas Theft Liability Act (thus not entitled to a mandatory award of attorneys' fees and costs); and 2) IWS was not entitled to costs for the supersedeas bond premiums on the first appeal. Dkt. No. 359.

The parties once again both moved for attorneys' fees. Transverse argued that it was once again entitled to fees pursuant to the Texas Civil Practice and Remedies Code § 38 .001 *et seq.,* this time arguing it was the prevailing party on both the Supply Contract and the NDA. Dkt. No. 360. IWS also moved for attorneys' fees under the mandatory fee provision of the TTLA, arguing that "Transverses's claims for misappropriation of trade secrets, conversion, violation of the TTLA, and breach of contract based on disclosure, were all premised on the same facts and legal arguments," and that therefore, it was entitled to its fees for all of these claims. Dkt. No. 365-1 at 6. The parties again cross-appealed and the district court again dismissed the motions for fees without prejudice. Dkt. No. 367 & 375.

On the second appeal to the Fifth Circuit, *Transverse II*, the court found as follows:

> The district court correctly awarded damages. It also correctly determined that IWS is not entitled to the costs of the premiums for its supersedeas bond. Accordingly, we now AFFIRM in part, VACATE the district court's judgment only as to Transverse's take-nothing judgment on its Texas Theft Liability Act claim because IWS is the prevailing party, and REMAND because IWS is entitled to a mandatory award of costs and attorney's fees on this claim.

*Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 185 (5th Cir. 2018) (per curium). In a lengthy footnote, the Fifth Circuit discussed, and did not determine, whether Iowa law or Texas law was applicable to the fees issue. *Id.* at 5 n.2.[2]

---

[2]The Court noted:

> IWS contends that Texas law should govern issues—including attorney's fees—arising out of the Supply Contract claims. In *Transverse I*, we said that it was "not entirely clear whether Texas or Iowa contract law" applied, but because the parties agreed that the law at issue was nearly identical, a resolution of the choice-of-law question was unnecessary. On remand, the district court held that Texas law applies under the Supply Contract. IWS now urges us to reverse and render on this point because it contends that Iowa law should govern. In response, Transverse insists that IWS did not adequately raise the choice-of-law issue in its first

On remand, the district court entered a scheduling order setting briefing deadlines for motions for attorneys' fees and costs. Fully briefed, these motions are now before the undersigned. Additionally. Transverse, fearing it has not properly pled a basis for a fee award for its claims under the Supply Contract under Iowa law, has moved to amend its complaint "to make clear that its attorneys' fee claim includes a claim for attorney's fees under Section 15 of the Mutual Non-Disclosure Agreement and under ¶ 19.2.2 of the Contract, in addition to TEX. CIV. PRAC. & REM. CODE §§ 38.001 *et seq*." Dkt. No. 394 at 2.

## II. STANDARD OF REVIEW

### A.    Motion for Fees and Costs

Traditionally, under the American rule, "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP. v. ASARCO LLC*, – U.S.–, 135 S. Ct. 2158, 2160 (2015). Accordingly, "[a] district court may not award attorneys' fees 'unless a statute or contract provides' the basis for such an award." *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016) (quoting *Baker Botts*, 135 S.Ct. at 2164). Federal Rule of Civil Procedure Rule 54(d)(1) states that "costs—other than attorneys' fees—should be allowed to the prevailing party." Local Rule CV-54 also states that unless a court determines costs at an earlier

---

appeal and that it should be judicially estopped from bringing it now.

Assuming arguendo that IWS adequately preserved this issue, the first question is whether the Iowa and Texas law, in fact, conflict. During the first appeal, IWS said that the analysis "of the legal insufficiency of the evidence on the contract claims and damages" was the same under Iowa or Texas law. Now, IWS again does not articulate or even identify a conflict between Texas or Iowa law, so our choice-of-law analysis necessarily stops. Accordingly, we will not reach this issue.

*Id.* at n.2 (internal citations omitted).

point, "costs will be assessed in the final judgment in a case," and that a "party awarded costs shall prepare and file a proposed bill of costs no later than 14 days after the entry of judgment." Unless a party objects, the clerk of court shall tax costs without further intervention from the Court. *Id.*

## B.     Motion to Amend

When requested prior to trial, leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) evinces a bias in favor of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982). Leave to amend should not be denied unless there is a substantial reason to do so. *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). There is a substantial reason to deny leave if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imps., Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). However, the "mere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial." 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1488.

## II.    ANALYSIS

## A.     Motion for Leave to Amend Complaint (Dkt. No. 394)

It its First Amended Complaint Petition, Transverse moved for fees pursuant to Texas Civil Practice & Remedies Code §§ 38.001 *et. seq*., and § 134.005(b). Dkt. No. 49 at 11. Tranverse now moves for leave to amend its Complaint post-trial, asserting that:

6

Because of the risk, however small, that this Court or the Fifth Circuit on a third appeal, despite law of the case, could conclude that Iowa law governs the Contract, or that some recent court of appeals cases on §38.001 control and have changed the law since the 2012 trial, then in the interest of justice, Transverse should be given leave beforehand to amend solely to make clear that its attorneys' fee claim includes a claim for attorney's fees under Section 15 of the Mutual Non-Disclosure Agreement ("NDA") and under Section 19.2 of the Contract, in addition to Tex. Civ. Prac. & Rem.Code §§38.001 *et seq*.

Dkt. No. 394 at 2.

Transverse argues it should be afforded leave to amend its Complaint because of a potential change in Texas law. Specifically, since this case was tried, Transverse asserts there has been a split among lower Texas appellate courts regarding whether §38.001 of the Texas Civil Practice & Remedies Code permits recovery of attorney's fees against LLC's like IWS. *See Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 755 fn. 39 (Tex. App.-Texarkana, July 07, 2017) (noting split ). Transverse argues that amending its Complaint to explicitly tie its request for attorneys' fees to the NDA[3] and the Contract,[4] ensures that Transverse can recover fees in the event that the Court

---

[3]Section 15 of the NDA provides:

Attorney Fees. In the event any court action is commenced by one party against the other, the substantially prevailing party is entitled to recover its out-of-pocket and court costs and reasonable attorney fees . . . .

Dkt. No. 393-8 at 20.

[4]Section 19.2 provides in relevant part:

In the event this Agreement is terminated by IWS pursuant to this Section 19.2, IWS shall pay Transverse, with respect to such item of Supply:

*** 

19.2.2 For the costs and expenses relating to materials or services obtained or ordered in connection with providing such Item of Supply which cannot be reasonable be defrayed elsewhere.

finds that Iowa law, which does not allow for a fee award unless expressly provided for in the contract, controls the Supply Contract. Tranverse argues that allowing this amendment is fair because IWS was allowed to amend its Answer and Counterclaim after the amendment deadline and "on the eve of trial" to add claims for attorneys' fees under the Civil Practice & Remedies Code for its breach of contract and TTLA claims.

IWS argues that Transverse has had nine years to amend its Complaint to add claims for contractual versus statutory attorneys' fees. Additionally, IWS asserts that adding a claim for fees under the Supply Contract is futile, as it does not provide for fees, and that adding a claim for fees under the NDA is also futile, as Transverse was not awarded damages pursuant to the NDA, and thereby does not qualify as a "prevailing party." IWS further argues that amendment at this late date would prejudice IWS, which would be forced to expend resources to address a legal theory not previously presented. Additionally, IWS asserts this is not a case of inadvertence or excusable neglect, as Transverse has been on notice of its legal theory that Iowa law applies to the substantive issue of the case, since IWS filed its Second Amended Answer and Counterclaim. Dkt. No. 55.

With regard to Transverse's claim that a "potential" change in Texas law requires this Court to allow it to amend its Complaint, Transverse misreads the law. Transverse cites to various cases in an effort to support its argument. *See Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 598 (5th Cir.), cert. denied, 434 U.S. 859 (1977) ( holding that an intervening change in the law nullified the res judicata effect of a prior decision); *Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1305 (Fed. Cir. 2016)) (holding that when the governing legal standards have changed during an appeal, the appellate court may vacate a determination made under superseded standards and to remand for

Dkt. No. 6-2 at 26.

consideration under the new standards); *Dussouy v. Gulf Coast Inv. Corp.*. 660 F.2d 594, 603–04 (5th Cir.1981) (finding the district court abused its discretion in not allowing a third motion to amend plaintiff's complaint before trial). In the first two cases, the law actually changed, and the courts acted accordingly. In this case, Transverse fears a "potential" change in the law—there has yet to be an actual change, and Transverse fails to cite a Texas Supreme Court case showing any. The third case is also not a case where there was an intervening change in the law, merely a case where a plaintiff was improperly disallowed a late amendment after the factual circumstances of the case changed. Lastly, in *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1242 (5th Cir. 1984), the Fifth Circuit, relying on Rule 54(c), held that it was appropriate to award attorneys' fees to a prevailing defendant after an appeal despite its failure to seek attorneys' fees in its pleadings. *Engel*, rather than relating to an intervening change in the law, was a special case where the defendant's circumstances changed. This is not the case here and this case does not support a need to amend the Complaint at this juncture. Transverse's argument that the Court should allow it to amend its complaint because of an intervening change in the law is without merit.

The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. A court may weigh in the movant's favor any prejudice that will arise from denial of leave to amend. *E.g., Foman v. Davis*, 371 U.S. at 182. In this case, Transverse has chosen to claim attorneys' fees only under the Texas Civil Practice & Remedies Code for the duration of the case, despite the fact that the contractual language upon which it now seeks to rely has been extant the entire time. Transverse has not given a good reason for its prior failure to plead a contractual

basis for fees, other than it seemingly believed that Texas law applied. This is not a new issue. IWS has consistently asserted that Iowa law applies, specifically to an award of attorneys' fees, so Transverse has no excuse for failing to move to amend at an earlier juncture. Additionally, this case has been tried appealed, remanded, tried, appealed, and remanded again. The only issue now before the court is the award of costs and fees. Allowing amendment at this juncture would delay the Court's consideration of the issue now before it, and unduly prejudice IWS. Moreover, while perhaps not "futile," the amendment is not necessary, as Texas, and not Iowa law is applicable.

The Court therefore **RECOMMENDS** that Transverse's Motion for Leave to Amend Complaint (Dkt. No. 394) be **DENIED WITHOUT PREJUDICE.**

**B.      Transverse's Motion for Fees and Costs  (Dkt. No. 393)**

Transverse, arguing it is the prevailing party on its breach of the Supply Contract and breach of the NDA claims, requests fees of $2,733.749.00 and costs in the amount of $140,368.38. Transverse argues that it is entitled to fees  pursuant to Texas Civil Practice & Remedies Code §§ 38.001 *et seq,* the NDA § 15, and Paragraph 19.2.2  of the Supply Contract. Transverse argues that Texas law applies to its claims for fees. IWS argues that Transverse is not entitled to fees under the Supply Contract, because the contract is governed by Iowa law, which does not provide for fees for contract suits by statute.  Under Iowa law, in order to recover fees for breach, a contract must specifically provide for a fee award by its express terms. *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010).  Second, IWS argues that  transverse is not entitled to fees on its NDA claims, because it did not prevail on this claim.  IWS also argues with Transverse's calculation of its fees, arguing that Transverse misallocated its fees to claims upon which it did not prevail.

As explained below, the undersigned **RECOMMENDS** that the district court **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 393) and award fees in the amount of $2,001,442.00 and costs in the amount of $140,368.38.

### 1. Transverse's Entitlement to Attorneys Fees Under the NDA

Transverse asserts it is the "substantially prevailing party" on its breach of the NDA claims, and is entitled to fees pursuant to ¶ 15 of the NDA. Transverse argues that it qualifies as the "substantially prevailing party" because the Fifth Circuit rendered judgment for Transverse that IWS breached the NDA, Dkt. No. 338 at 16-17, and, on remand, the district court found that "Transverse prevailed on its claims for breach of the NDA" even though "it was not entitled to damages," Dkt. No. 380 at 3. IWS argues that because Transverse recovered zero damages, it did not "prevail" and is not entitled to fees pursuant to Texas Civil Practice & Remedies Code § 38.001 *et seq*. *See Merritt Hawkins Assocs., LLC v. Gresham*, 861 F.3d 143 (5th Cir. 2017); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages.").

Transverse argues that even without a damages award, it qualifies as the "substantially prevailing party" under terms of the NDA because there was a "material alteration of the legal relationship between the parties." *Farrar v. Hobby*, 506 U.S. 103 (1992). The Court finds this analysis inapplicable in the context of a breach of contract claim. Transverse was not awarded damages on its breach, and damages are an essential element of a contract claim under Texas law. *Smith Int'l, Inc. v. Egle Grp.*, LLC, 490 F.3d 380, 387 (5th Cir. 2007) . Therefore, Transverse did not prevail on its claim breach of the NDA claim and is not entitled to attorneys' fees on this claim.

The undersigned **RECOMMENDS** that the district court **DENY** Transverse's Motion for Fees (Dkt. No. 393) for its breach of the NDA claim.

## 2.    Transverse's Entitlement to Attorneys' Fees Under the Supply Contract

IWS argues that Iowa law applies to the Supply Contract, and that, therefore Transverse is not entitled to its attorneys' fees for its breach of contract claim.

Iowa does not allow for an award of attorneys' fees unless explicitly provided for by contract. The Supply Contract states at Paragraph 25.7, "This Contract shall be governed and construed by the laws of the State of Iowa." Dkt. No. 6-2 at 29. Section 19.6 of the Supply Contract also provides:

> The parties agree that any dispute regarding the meaning, performance or enforcement of this Contract will, prior to resorting to litigation or cessation of work, be submitted to mediation . . . . Any mediation initiated as a result of this engagement shall be administered within the county·of Travis, by or recommended by, Austin Dispute Resolution Center, according to its mediation rules, and *any ensuing litigation shall be conducted within said county, according to Texas law.* . . .

Dkt. No. 6-2 at 26 (emphasis added). The record reflects that this case proceeded to mediation prior to trial. IWS argues that, under Texas law, attorneys' fees in a breach of contract case are a "substantive"[5] part of the suit, and therefore governed by the choice of law provision in the contract. *Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004). IWS cites to *Kucel v. Heller*, 813 F.2d 67, 74 (5th Cir. 1987), for the proposition that for cases involving contracts with choice-of-law clauses, the rule remains that if the parties agree that the contract will be governed by the laws of a particular state, then that intention prevails. Transverse argues that the "law of the case" is that Texas "substantive" law applies, and IWS did not properly appeal this issue in its first appeal, thereby waiving it, and is judicially estopped from bring it at this juncture. If Texas law is the substantive

_____

[5]IWS acknowledges that the issue of attorneys fees is one of substantive law in its pleadings. Dkt. No. 402 at 2.

12

law of the case, the award of attorney's fees is governed by Texas law. *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002).

Under the law of the case doctrine, regarding an issue that has been determined on appeal, district courts are "[to] abstain[ ] from reexamining an issue of fact or law that has already been decided on appeal." *United States v. Teel*, 691 F.3d 578, 582–83 (5th Cir. 2012). This means that, after an appellate court has ruled on an issue in the case, the district court may not reconsider any "issues [the appellate court] decided both expressly and by necessary implication" or any "other issues arising out of [the appellate court] ruling [that were] not raised" but could have been. *See id.* (quoting *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) (per curiam)). In this case, the district court ruled that "this court applies the substantive law of the forum state, here Texas," Dkt. No. 205 at 4, and continued to apply Texas law through trial and up to the first appeal, Dkt. No. 304 at 11-12. IWS never appealed the application of Texas law in the first appeal, noting that "the analysis is the same under Iowa or Texas law." Dkt. No. 401-1 at 28.[6] After the first remand, upon consideration of IWS's Motion to Alter or Amend Judgment, Judge Yeakel stated,:

> Iowa Wireless's assertion that Iowa law governs Transverse's breach of contract claim under the terms of the contract has been fully and properly addressed by both the magistrate court and this court. Iowa Wireless's interpretation of the contract is clearly contrary to controlling precedent.

---

[6]IWS asserts that it continued to assert, throughout the case, that Iowa law applies to all substantive issues is the case. IWS cites its Answer and Counter-Claim, Dkt. No. 218 at ¶ 88, and briefing on first appeal, Dkt. No. 401-1 (not claiming error, but arguing Iowa law applies, and noting the analysis is the same under both Texas and Iowa law). And, in its opposition to Transverse's Motion for Attorneys' Fees, Dkt. No. 311, IWS argued that Transverse is not entitled to attorneys fees pursuant to the Supply Contract because it is governed by Iowa law. Whether IWS did or did not persistently argue that Iowa law applied to the contract does not change the law of the case analysis, as the Fifth Circuit never ruled on the issue and the district court did.

Dkt. No. 380 at 3 (citing cases). IWS directly appealed this issue in its second appeal, and the appellate court declined to address the choice-of-law issue, stating that IWS had not identified a conflict in Texas and Iowa law.[7] The appellate court also did not rule on whether the issue had been preserved on appeal or waived. Thus, in *Transverse II*, the Fifth Circuit did not rule on the issue of whether Iowa or Texas law applied to the Supply Contract. Moreover, whether it even could have ruled on the issue is unclear, as Texas and Iowa contract law do not conflict except as to the issue of attorneys' fees, and no fees had been awarded prior to either appeal.

Since the appellate court did not rule on the choice-of-law issue, the Court is left with Judge Yeakel's consistent ruling that Texas law applies to the Supply Contract. Although a district court has discretion to reconsider its own prior rulings, *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 171 (5th Cir. 2010), the "law of the case" doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912). The law of the case doctrine discourages courts from revisiting interlocutory decisions by an earlier court in the same case unless (1) the evidence has substantially changed, (2) controlling legal authority has changed, or (3) the earlier decision was clearly erroneous and would cause manifest injustice. *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 703 (5th Cir. 2014); *In re Ford Motor Co.*, 591 F.3d 406, 411-12 (5th Cir. 2009). None of these exceptions apply here. The Court defers to Judge Yeakel's prior ruling on this issue and finds that Texas law applies to the Supply Contract and Transverse is entitled to attorneys' fees pursuant to Texas Civil Practice & Remedies Code §§ 38.001 *et. seq*.

---

[7] The Court stated in relevant part, " Now, IWS again does not articulate or even identify a conflict between Texas or Iowa law, so our choice-of-law analysis necessarily stops. Accordingly, we will not reach this issue." *Transverse II,* 753 F. App'x at 185 n.2.

The undersigned **RECOMMENDS** that the district court **GRANT** Transverse's Motion for Attorneys' Fees (Dkt. No. 393) for its breach of the Supply Contract claim.

### 3. Fee Award

Transverse seeks $2,001,442.00 in attorneys' fees for its breach of the Supply Contract claim, and supports its request with billing records and affidavits of counsel. Dkt. No. 393-1 through 10. IWS asserts that Transverse's documentation improperly allocates the vast majority of its fees to the breach of early termination breach of contract claim. IWS argues that Transverse's Breach of the Supply Contract claim consisted of two distinct claims; one based on early termination and the other based on "access to the Service." Dkt. 267 at 1 (verdict form). IWS argues that since the "access to the Service claim," for which it claims Transverse sought the majority of its damages, was reversed by the Fifth Circuit as a matter of law, Transverse's requested fees should be reduced as to that claim by 50% or a maximum award of $1 million . *Transverse, L.L.C v. Iowa Wireless Services, L.L.C.*, 617 F. App'x 272, 275 n.3 (5th Cir. 2015) ("we reverse the judgment of the district court with respect to the 'access to the service' claim"); Dkt. No. 402 at 9 (citing to Dkt.393 at 2). Transverse responds that its requested fee award does not include any fees for the "access to the Service" claim, and it has properly excluded those expenses from its requested fee award. Transverse also asserts that IWS's claim that it has requested fees for the "access to the Service" claim is unsupported by any evidence in the record. IWS lastly argues that Transverse's fees should be reduced as it only qualifies as the prevailing party on one of its six claims, and therefore did not obtain a degree of success meriting its requested fees.

Federal courts sitting in diversity typically apply the lodestar method in calculating reasonable attorneys' fees under Texas law. *See, e.g., Rappaport v. State Farm Lloyds*, 2001 WL

1467357, at *3 (5th Cir. 2001) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"); *see also Gordon v. Quicksilver Jet Sales, Inc.*, 2010 WL 3239266, at *1 (W.D. Tex. Aug. 16, 2010) (using the lodestar to calculate attorneys' fees for plaintiff asserting breach of contract claim until Texas law). Under this approach, the district court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Once the lodestar figure is initially determined, the court may adjust the figure upward or downward as necessary in light of several enunciated factors. *La. Power*, 50 F.3d at 324.[8] The burden is on the party seeking attorneys' fees to demonstrate the amount sought, including any adjustment or enhancement. *Jackson v. Host Int'l, Inc.*, 426 Fed. Appx. 215, 226 (5th Cir. 2011). An award of attorneys' fees is entrusted to the "sound discretion" of the district court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).

The Court has reviewed Transverse's documentation and finds that it has properly segregated out any fees for the "access to the Service" breach by placing those fees in the same bucket as fees relating to the disclosure claims, which are not recoverable. Transverse has submitted two charts

---

[8]The lodestar amount is presumptively reasonable and should only be adjusted in exceptional circumstances based on the following *Johnson* factors: (1) the time and labor required for litigation; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorneys had to refuse other work to litigate the case; (5) the attorneys' customary fee; (6) whether the fee was fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was undesirable; (11) the type of attorney-client relationship and whether the relationship was longstanding; and (12) awards made in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

outlining each timekeeper's rate and hours billed on the contract termination claim. Dkt No. 393 at 17, White Aff. Ex. 4, and Dkt. No. #93 at 18, White Aff. Ex. 5. These charts are supported by the Affidavit of Raymond White. Dkt. No. 393-1. The Court finds the billable rates are reasonable and the hours billed are appropriately documented. Accordingly, the lodestar in this case is the requested amount of $2,001,442.00. No exceptional circumstances exist in this case to adjust the amount of the lodestar. The undersigned finds that Transverse should be awarded $2,001,442.00 in attorneys' fees. The Court declines to award Transverse conditional fees on appeal, for the same reasons it declines to award IWS its requested appellate fees, as explained below.

The undersigned **RECOMMENDS** that the district court **AWARD** Transverse attorneys' sees for its breach of the Supply Contract claim in the amount of $ 2,001,442.00.

### 4. Costs

Transverse seeks costs in the amount of $140,368.38. IWS does not dispute the amount of Transverse's costs. Therefore, the Court finds that transverse should be granted costs in the amount of $140,368.38. The undersigned **RECOMMENDS** that the district court **GRANT** Transverse's Motion for Costs (Dkt. No. 393) for its breach of the Supply Contract claim and **AWARD** costs in the amount of $140,368.38.

### C. IWS's Motion for Attorneys Fees and Costs (Dkt. No. 395)

In *Transverse II,* the Fifth Circuit held that "IWS is the prevailing party and is entitled to a mandatory award of attorney's fees and costs" under the Texas Theft Liability Act. 753 F. App'x 184 at 190; *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b) (Vernon 2011). The court thereafter ordered the case "REMAND[ED] because IWS is entitled to a mandatory award of costs and attorney's fees on this claim." 753 F. App'x 184 at 190. Based upon its status as a prevailing party on its TTLA

claim, IWS seeks attorneys' fees in the amount of $2,563,009.00, $283,810.26 in costs, and $78,750.00 in conditional attorneys' fees for any appeal. The undersigned **RECOMMENDS** that the district court **GRANT IN PART** and **DENY IN PART** IWS's Application for Attorneys' Fees and Costs (Dkt. No. 395) as explained below.

### 1. Attorneys' Fees

IWS moves for attorneys' fees in the amount of $2,563,009.00, which IWS represents is approximately 50% of all fees it incurred in this case. IWS's claim for fees is based upon its prevailing party status on its TTLA claim. "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they are owed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). In this case, IWS moves for fees using the lodestar analysis.

IWS argues that because Tranverse's claims for misappropriation of trade secrets, conversion, violation of the TTLA, and breach of the NDA are all "subsumed under the terms of the NDA" it is entitled to fees on all these claims. Additionally, IWS asserts that Transverse's breach of contract claim based upon the "access to the Service" arose from the same facts and evidence and the same evidence as the rest of the disclosure claims, and therefore, IWS is entitled to its fees for this claim as well. IWS cites to case law recognizing that Texas law allows recovery of all fees where "the services rendered relate to (1) multiple claims arising out of the same facts or transaction and (2) the prosecution or defense entails proof or denial of the same facts, so as to render attorney's fees inseparable." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, (5th Cir. 2003) (citing *Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 41 (Tex. App-Amarillo 1997, writ denied) (emphasis added); *see also*

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). A claimant must segregate recoverable from unrecoverable fees for attorney's fees related solely to a claim for which such fees are unrecoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). "[W]hen discrete legal services advance both a recoverable and unrecoverable claim, [] they are [sufficiently] intertwined that they need not be segregated." *Id.* Whether fees can be segregated between various claims historically has been a question for the Court. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied), *disapproved on other grounds by Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014).

IWS asserts that it determined the amount of requested fees by subtracting any fees relating to Transverse's claim for breach of contract based on early termination, any fees related solely to discrete elements of Transverse's "disclosure" claims not applicable to Transverse's claim for violation of the TTLA, and fees that would not have been incurred on the TTLA claim alone. IWS offers that it reviewed the remaining fee entries and excised any arguably redundant or excessive fees. Additionally, IWS reduced the number of timekeepers, writing off the time of two partners, two associates, and two paralegals. In sum, IWS requests fees for all its legal work in this case not solely related to the breach of contract claim. It asserts all other claims in the case are "inextricably intertwined" with the TTLA claim, and that IWS's requested fees and costs are not segregated with regard to the disclosure-based claims brought by Transverse.

Transverse responds that IWS has not properly segregated its fees— IWS has allocated 50% of its total fees to the TTLA claim. Additionally, Transverse argues that IWS's fees are excessive. IWS's total legal fees are $5.126 million while Transverse's total fees are $3.138 million. Transverse argues that the contract claim and counter-claim comprise 76% of the work in the case and that

IWS's TTLA fees should be no more than $658,980 to $725,812, under the evidence. Transverse argues that IWS bears the burden of showing that its fees could not be segregated, which it has not done here. *Tony Gullo Motors,* 212 S.W.3d at 311.

In this case, the Fifth Circuit remanded vacating the district court's judgment "only as to Transverse's take-nothing judgment on its Texas Theft Liability Act claim because IWS is the prevailing party, and . . . because IWS is entitled to a mandatory award of costs and attorney's fees *on this claim*." *Transverse II,* 753 F. App'x at 185, 2018 WL 4210239 (emphasis added). The mandate rule, which is a corollary or specific application of the law of the case doctrine, prohibits a district court on remand from reexamining an issue of law or fact previously decided on appeal and not resubmitted to the trial court on remand." *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir.2006) (citations omitted). The district court "must proceed within the letter and spirit of the mandate by taking into account the appeals court's opinion and the circumstances it embraces." *Id.* (citing *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 333 (5th Cir.2002)). Thus, the undersigned, following the dictates of the Fifth Circuit, may award attorneys' fees only for the TTLA claim.

The Court finds that Transverse is correct that as a matter of law, IWS has failed to properly segregate its fees, and has not carried its burden to show the Court that its fees could not be segregated. *Tony Gullo Motors,* 212 S.W.3d at 311. The mandate to the Court is to award costs and fees for the TTLA claim only*,* not the additional disclosure claims, and certainly not for the defense of Tranverse's claim for breach of contract based on "access to the Service." IWS has not submitted evidence as to the proper award of fees as to the discrete TTLA claim.

Accordingly, the undersigned **RECOMMENDS** that the district court **DENY WITHOUT PREJUDICE** IWS's Motion for Fees and **ORDER** IWS to submit documentation to the Court supporting its claim for attorneys' fees for the TTLA claim only.

**2.     Costs**[9]

IWS requests $283,810.26 in costs. The parties do not debate that IWS is entitled to costs, only the proper amount and what qualifies as "costs" under the Federal Rules of Civil Procedure. In support of its motion, IWS has submitted various bills supporting its request for costs and a chart listing the costs it seeks. Dkt. No. 395-10 & 11. Transverse argues that many of IWS's costs are unrecoverable under Texas law; that its requested costs are arbitrarily high; and that its costs are unrelated to the claims on which it arguably prevailed.

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure,[10] "costs—other than attorney's fees—should be allowed to the prevailing party." The categories of recoverable costs are set out in 28 U.S.C. § 1920.[11]  This list is exhaustive. Courts may decline to award statutory costs but may

---

[9]IWS failed to file a Bill of Costs as required by Local Rule CV-54.

[10]Transverses argues incorrectly that court costs are determined under Texas law. "The award of costs is governed by federal law." 10  Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2669 (1971).

[11]That statute allows the following costs:

(1)     Fees of the clerk and marshal;
(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)     Fees and disbursements for printing and witnesses;
(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)     Docket fees under section 1923 of this title;
(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under §1828 of this title.

not award costs not enumerated in the statute. *Tittle v. Raines*, No. 3:99-CV-0478-L, 2002 WL 31757623, at *1 (N.D. Tex. Dec. 3, 2002) (citing *Crawford Fitting Co.*, 482 U.S. at 441–42; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)).

In this case, IWS deems as "costs" the following: $186,849.63 in document review and discovery costs; $78,292.35 in costs that are not attorneys' fees; and $18,668.28 in trial witness expenses. Dkt. No. 395-10. Along with document review and discovery costs, IWS includes as costs expert witness fees and costs of copies of depositions; costs of videotaping depositions; travel expenses and meals for attorneys and witnesses; and the cost of Westlaw research. Some, but not all, of these of these items qualify as "costs" pursuant to § 1920.

First, document review expenses and electronic discovery costs[12] do not qualify as "costs," except to the extent they are incurred in the copying and production of electronic documents pursuant to § 1920(4). "Section 1020(4) allows for "[f]ees for exemplification and the cost of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. §§ 1920(4). IWS's request for document review expenses and electronic discovery costs should be denied. Second, § 1920(6) only allows the Court to tax as costs "[c]ompensation of court appointed experts." The expert witnesses at issue here were not court appointed, thus, IWS is not entitled to recover for their fees to the extent they exceed the cost of witness fees set out in 28 U.S.C. § 1821. Recovery of expert fees is limited to the statutory amounts authorized under 28 U.S.C. § 1821 and § 1920. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir.1995), *citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987); *West Virginia Univ. Hosps., Inc. v. Casey*, 499

_____

[12]IWS seems to concede it has in some instances moved for "costs" on expenses more properly characterized as "fees." Dkt No. 405 at 7 ("these out of pocket 'costs' or 'fees,' however characterized . . . .").

U.S. 83, 84-88 (1991)(limiting witness fees to statutory amounts, absent express statutory authority); *Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir. 1996) ("costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, [ ] are clearly nonrecoverable."). Expert witness fees in excess of the amounts allowed 28 U.S.C. § 1821 are properly denied.

Next, copies of depositions are taxable as costs, but in a limited manner. "It is generally recognized that the basic costs of an original deposit ion transcript and one copy are taxable against the non-prevailing party." *Favata v. Nat'l Oilwell Varco, LP* , No. 2:12-CV-82, 2014 WL 5822781, at *3 (S.D. Tex. Nov. 10, 2014); *see also E.A.F.F. v. United States*, No. SA-08-CA-124-XR, 2014 WL 2155263, at *2 (W.D. Tex. May, 22, 2014) (awarding costs for one copy of deposition transcripts). "However, charges for multiple or certified copies of depositions are not taxable as costs absent some showing of why the extra copies were needed in addition to the originals." *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3-10-CV-0481-M-BD, 2010 WL 5093945, at *7 (N.D. Tex. Nov. 10, 2010) (citing cases), adopted by 2010 WL 5093944 (N.D. Tex. Dec. 13, 2010). IWS has not shown the need for additional copies of deposition transcripts, and thus any additional copies are not properly taxable as costs.

The costs of videotaping depositions is recoverable under § 1920(2). *See Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 976 (S.D. Tex. 2011)*; see also S & D Trading Academy, LLC v. AAFIS, Inc.*, 336 Fed.Appx. 443, 450–451 (5th Cir.2009), cert. denied, 130 S.Ct. 1054 (2010) (observing that the Judicial Administration and Technical Amendments Act of 2008 amended § 1920(2) to permit a judge to tax as costs fees for "electronically recorded transcripts").

Costs do not include travel expenses for counsel. *Giner v. Estate of Higgins*, 2012 WL 2397440, at *3 (W.D. Tex. Jun 22, 2012). Any request for such travel expenses is denied. However, 28 U.S.C. § 1821(c)(4), states that "[a]ll normal travel expenses [of witnesses] within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title." Those expenses include fees for meals, lodging, and travel. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir.1994). For travel, section 1821(c)(1) provides that a witness "shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled;" it further provides that the witness "shall utilize a common carrier at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). For lodging and meals, section 1821(d) provides that a subsistence allowance will be paid to a witness when an overnight stay is required at the place of attendance, and that the amount of the subsistence allowance shall be paid "in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in such area by employees of the Federal Government." 28 U.S.C. § 1821(d)(2); *see United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 575 (5th Cir. 2005). Thus, IWS may recover travel expenses and the costs of meals for its witnesses, to the extent the requested amounts fall within the dictates laid out above.

Costs associated with legal research, such as Westlaw searches, are not taxable as "costs". *See E.g., Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 2007 WL 842771, at *10 (M.D.Fla. Mar.20, 2007) (not awarding costs associated with legal research in FLSA case). These requested costs are denied.

The Court **RECOMMENDS** that the district court **GRANT IN PART and DENY IN PART** IWS's Motion for Costs and **ORDER** IWS to submit a Bill of Costs that conforms to the above findings and Local Rule CV-54 within 14 days of the date the district court rules on this Report and Recommendation. To the extent Transverse argues that IWS's costs are unrelated to the claim or claims it prevailed on, and the amount of costs are arbitrarily high, it should raise those objections after IWS files its Bill of Costs.

### 3. Conditional Fees on Appeal

IWS seeks an award of $78,750.00 in conditional attorneys' fees for any appeal. An award of attorneys' fees may include conditional fees for an appeal. *Solomon v. Steitler*, 312 S.W.3d 46, 59 (Tex. App.—Texarkana 2010, no pet.); *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.], 2006, no pet.). As with fees awarded for work during a trial, "there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees." *Siegler v. Williams*, 658 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1983, no writ). IWS asserts that a cross-appeal will likely take about 150 hours at its current counsels' adjusted rates of $695 and $350 per hour. Notwithstanding the foregoing, "[f]ederal district courts in this circuit are hesitant to award such fees, because, typically, the Fifth Circuit will remand the appropriate fee determination once the claim for fees is ripe for adjudication." *Centerpoint Energy Inc. v. Assocd. Elec. & Gas Ins. Servs. Ltd.*, 2011 WL 13134747, at *4 (S.D. Tex. Sept. 9, 2011); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 2003 WL 21662829, at *6-7 (N.D. Tex. July 15, 2003), *aff'd in part, rev'd in part and remanded*, 382 F.3d 546 (5th Cir. 2004) (declining to award fees for an appeal before services were rendered and because the Fifth Circuit has concluded that they "have the power to make an award of services rendered in this court"). The Court finds it

prudent to wait until an appeal has been completed to make a determination on this issue, and declines to award conditional fees at this time. *See Fid. & Deposit Co. of Md. v. Rodriguez*, 2009 WL 2382979 at *5 (W.D. Tex. June 10, 2009) (denying without prejudice attorneys' fees for plaintiff to refile motion "after the fees have, in fact, been incurred").

The undersigned **RECOMMENDS** that the district court **DENY** IWS's Motion for Conditional fees on Appeal **WITHOUT PREJUDICE**.

## IV. RECOMMENDATIONS

For all of the reasons set forth above the undersigned **RECOMMENDS** that the district judge:

• **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 393) and **AWARD** Transverse $2,001,442.00 in attorneys' fees and $140,368.38 in costs for its breach of the Supply Contract claim.

• **DENY** Plaintiff's Motion for Leave to Amend its Complaint to Make Clear It Seeks Attorneys' Fees Under Contracts (Dkt. No. 394).

• **GRANT IN PART AND DENY IN PART** IWS's Application for Attorneys' Fees and Costs (Dkt. No. 395). Specifically, the undersigned **RECOMMENDS** that the district court **GRANT IN PART** IWS's Motion for Costs and **ORDER** IWS to submit a Bill of Costs that conforms to the above findings and Local Rule CV-54 within 14 days of the date the district court rules on this Report and Recommendation, and **DENY WITHOUT PREJUDICE** IWS's Motion for Fees and **ORDER** IWS to submit documentation to the Court supporting its claim for attorneys' fees for the TTLA claim *only*, by the same deadline.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections

to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 20th day of July, 2019.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE