# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| TRANSVERSE, LLC | § | |
| | § | |
| VS. | § | A-10-CV-517-LY |
| | § | |
| IOWA WIRELESS SERVICES, LLC | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Amended Application for Attorneys' Fees and Costs (Dkt. No. 414); Plaintiff's Response (Dkt. No. 415); and IWS's Reply (Dkt. No. 417). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules.

## I. BACKGROUND

Iowa Wireless Services, a wireless telephone services provider, hired Transverse, a software development company, to develop customized billing software. Transverse and IWS entered into two agreements: a "Contract for the Supply of: blee(p) Customer Care and Billing System" under which Transverse was to develop software for IWS; and a mutual Non-Disclosure Agreement dated March 3, 2009, under which IWS agreed to maintain the confidentiality of certain proprietary information of Transverse. The parties' relationship broke down, and Transverse sued IWS for breach of both the Supply Contract and the NDA, misappropriation of trade secrets, conversion, and violating the Texas Theft Liability Act. IWS removed the case to this Court in 2010, and countersued for breach of the Supply Contract. The claims related to breach of the Supply Contract were tried to a jury and the remaining claims were tried to the bench (the NDA contained a jury waiver provision).

The jury found in favor of Transverse, determining that IWS breached the Supply Contract both by wrongfully terminating it and by violating an express prohibition to not give "a competitor access to the Service." The jury awarded Transverse lost profit damages, reliance damages, and lost value damages for the "access to the Service" breach. However, the district court set aside the award for the "access to the Service" breach because it determined that it was not supported by legally sufficient evidence. The district court also ruled against Transverse on its tort claims and on its claim for breach of the NDA. The district judge entered final judgment, awarding Transverse in excess of $11 million in damages, on September 30, 2013. Dkt. No. 305. Thereafter, both parties moved for attorneys' fees, arguing that Texas law applied, and claiming an entitlement to fees pursuant to Texas Civil Practice and Remedies Code § 38 .001 *et seq.* Dkt. Nos. 306 & 308. Transverse argued that it was entitled to fees because it prevailed on its Supply Contract claims, and IWS argued that it was entitled to fees because it successfully defended the NDA claim, and the tort claims were "subsumed under" the defense of that claim. The district court stayed execution of its judgment, Dkt. No. 321, and once the parties appealed, Dkt. No. 323, dismissed without prejudice the competing motions for attorneys' fees. Dkt. No. 324.

The parties cross-appealed. The Fifth Circuit panel affirmed in part, reversed and rendered in part, vacated in part, and remanded. The panel held that: (1) IWS breached the Supply Contract by wrongfully terminating but not by providing "access to the Service" to a competitor; (2) the district court should not have permitted Transverse to recover lost profits for a twelve-year period for the breach of the Supply Contract claim; (3) Transverse could not recover both lost profits and reliance damages for the same breach; and (4) IWS breached the non-disclosure agreement.

2

*Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 617 Fed. Appx. 272 (5th Cir. 2015) ("*Transverse I*"). The court clarified the issues remaining on remand:

> the proper amount and type of damages that Transverse may collect on its breach-by termination claim; the amount of damages, if any, that Transverse may collect for IWS's breach of the [non-disclosure agreement]; and whether IWS is liable under any of the tort theories pressed by Transverse.

617 Fed. Appx. at 282.

On remand, the district judge held a bench trial. Dkt. No. 355. Transverse elected to pursue reliance damages, and the district court awarded Transverse $1.7 million in reliance damages for IWS's breach of the Supply Contract and determined "as a matter of law" that Transverse had "no cognizable damages" for IWS's breach of the non-disclosure agreement. Dkt. No. 358 at 7. Having determined that IWS's conduct resulted in no loss to Transverse, the district court also rejected Transverse's misappropriation of trade secrets, conversion, and Texas Theft Liability Act claims. *Id.* at 7-9. It also ordered that IWS take nothing on its counterclaim for breach of the Supply Contract and that Transverse take nothing on its claims against IWS for breach of the NDA. The district court also found, regarding attorneys' fees and costs: (1) IWS was not a prevailing party under the Texas Theft Liability Act (thus not entitled to a mandatory award of attorneys' fees and costs); and (2) IWS was not entitled to costs for the supersedeas bond premiums on the first appeal. Dkt. No. 359.

The parties once again both moved for attorneys' fees. Transverse argued that it was entitled to fees pursuant to the Texas Civil Practice and Remedies Code § 38 .001 *et seq.,* this time arguing it was the prevailing party on both the Supply Contract and the NDA. Dkt. No. 360. IWS moved for attorneys' fees under the mandatory fee provision of the TTLA, arguing that "Transverses's claims for misappropriation of trade secrets, conversion, violation of the TTLA, and breach of contract

3

based on disclosure, were all premised on the same facts and legal arguments," and that therefore, it was entitled to its fees for all of these claims. Dkt. No. 365-1 at 6. The parties again cross-appealed and the district court again dismissed the motions for fees without prejudice. Dkt. No. 367 & 375. On the second appeal, the Fifth Circuit found as follows:

> The district court correctly awarded damages. It also correctly determined that IWS is not entitled to the costs of the premiums for its supersedeas bond. Accordingly, we now AFFIRM in part, VACATE the district court's judgment only as to Transverse's take-nothing judgment on its Texas Theft Liability Act claim because IWS is the prevailing party, and REMAND because IWS is entitled to a mandatory award of costs and attorney's fees on this claim.

*Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 185 (5th Cir. 2018) (per curium) ("*Transverse II*").

On remand, the district court entered a scheduling order setting briefing deadlines for motions for attorneys' fees and costs. Fully briefed, these motions were referred to the undersigned, who submitted a Report and Recommendation on July 22, 2019. (Dkt. No. 407). That Report recommended that the district judge grant Transverse's Motion for Fees and Costs in part and found the appropriate amount of fees and costs was $2,001,442.00 in fees and $140,368.38 in costs. The Court, relying on the Fifth Circuit's opinion that IWS was entitled to a mandatory award of costs and attorney's fees on the Texas Theft Liability Act claim, recommended that the district court grant in part and deny in part IWS's request for fees and costs (in which IWS asked for $2,563,009.00 in fees, $283,810.26 in costs, and $78,750.00 in conditional attorneys' fees for any appeal[1]). In doing so, the undersigned rejected IWS's method of calculating its recoverable fees and costs, and the argument that the five claims were inextricably intertwined. Specifically, IWS had argued that

---

[1]The Court denied the motion for conditional fees on appeal without prejudice as premature.

(1) Tranverse's claims for misappropriation of trade secrets, conversion, violation of the TTLA, and breach of the NDA are all "subsumed under the terms of the NDA," so it was entitled to fees on all those claims; and (2) Transverse's breach of contract claim based upon the "access to the Service" arose from the same facts and evidence as the rest of the disclosure claims, and therefore, IWS was entitled to its fees for this claim as well. The Court rejected this argument, stating:

> the undersigned, following the dictates of the Fifth Circuit, may award attorneys' fees only for the TTLA claim. The Court finds that Transverse is correct that as a matter of law, IWS has failed to properly segregate its fees, and has not carried its burden to show the Court that its fees could not be segregated. *Tony Gullo Motors,* 212 S.W.3d at 311. The mandate to the Court is to award costs and fees for the TTLA claim only*,* not the additional disclosure claims, and certainly not for the defense of Tranverse's claim for breach of contract based on "access to the Service." IWS has not submitted evidence as to the proper award of fees as to the discrete TTLA claim.

Dkt. No. 407 at 20. Though the Court could have exercised its discretion to deny the fee request outright based on the failure to segregate—the burden for which falls on IWS—it did not do so. Instead, the Court gave IWS a chance to remedy this failure, and ordered it "to submit documentation to the Court supporting its claim for attorneys' fees for the TTLA claim only." *Id.* at 21. As to costs, the Court found that IWS's motion for costs included many items not properly taxable as costs. The Court recommended the motion be granted in part and denied it in part and that IWS be ordered to submit a Bill of Costs limited to those things that qualify as costs and in compliance with Local Rule CV-54. The District Court adopted these recommendations and ordered IWS to "submit documentation to this court supporting its claims for attorneys' fees for the Texas Theft Liability Act only on or before September 27, 2019." Dkt. No. 413 at 3.

IWS's response to this has been defiant. It filed an Amended Application for Fees requesting the exact same $2,563,009.00 in fees it sought in the Application denied by the Court (though it did

lower its request for costs, albeit only to $182,199.67). Transverse opposes the motion, arguing that IWS has once again failed to properly segregate its fees, the fees are unreasonable, and the costs are also too high.

## II. STANDARD OF REVIEW

Traditionally, under the American rule, "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts LLP. v. ASARCO LLC*, – U.S.–, 135 S. Ct. 2158, 2160 (2015). Accordingly, "[a] district court may not award attorneys' fees 'unless a statute or contract provides' the basis for such an award." *Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 470 (5th Cir. 2016) (quoting *Baker Botts*, 135 S.Ct. at 2164).

Federal Rule of Civil Procedure Rule 54(d)(1) states that "costs—other than attorneys' fees—should be allowed to the prevailing party." Local Rule CV-54 also states that unless a court determines costs at an earlier point, "costs will be assessed in the final judgment in a case," and that a "party awarded costs shall prepare and file a proposed bill of costs no later than 14 days after the entry of judgment." Unless a party objects, the clerk of court shall tax costs without further intervention from the Court. *Id.*

## III. ANALYSIS

**A.     Attorneys' Fees**

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they are owed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Federal courts sitting in diversity typically apply the lodestar method in calculating reasonable attorneys' fees. *Hensley v. Eckerhart*,

6

461 U.S. 424, 433 (1983) (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"). Under this approach, the district court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly billing rate, then makes adjustments upward or downward as necessary in light of several enunciated factors. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The burden is on the party seeking attorneys' fees to demonstrate the amount sought, including any adjustment or enhancement. *Jackson v. Host Int'l, Inc.*, 426 Fed. Appx. 215, 226 (5th Cir. 2011). An award of attorneys' fees is entrusted to the "sound discretion" of the district court. *Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990). When there are multiple claims and a party is entitled to recover fees on only one of them, the party seeking fees bears the burden "to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors L L.P v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).

Rather than do the work needed to segregate the legal fees incurred in defending the TTLA claim from that done on other claims, IWS has chosen to disagree with the Court's previous fee order. IWS claims that "[t]o the extent the Court's order would require IWS to segregate fees attributable only to the TTLA claim and not others, it would be inconsistent with Texas law." Dkt. No. 414 at 4 n.2 (citation omitted). Because it believes the order was inconsistent with Texas law, rather than following the order it instead "harmonized the order with Texas law." *Id.* IWS then spends less than a page of its motion contending that its counsel reviewed all of the billings, "and excluded all time and entries for work related solely to Transverse's claim for breach of contract based on early termination . . . [and] to other, non-TTLA disclosure claims." *Id.* at 4. Remarkably, this resulted in exactly the same fees as IWS requested in its original request. As Tranverse notes

7

in its response, in doing so "IWS uses the same methodology and time and work entries by the same lawyers, and even reuses the same exhibits and 'segregation' designations that were attached to its initial motion (tellingly now containing two file-stamped lines at the top )." Dkt. No. 415 at 1. The Fifth Circuit has held that when a party requesting fees fails to meet its burden to segregate recoverable from unrecoverable fees, "the district court retains discretion to deny [the movant's] attorney's fees request for failure to segregate." *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 250 (5th Cir. 2014). When IWS made its first fee request and failed to properly segregate its fees the Court exercised its discretion conservatively, and did not deny the request outright but instead allowed IWS a second crack at the segregation Texas law requires. But IWS didn't budge, and instead doubled down on its insistence it is entitled to over $2.5 million in fees.

In these circumstances, the proper exercise of the Court's discretion is clear. IWS failed to carry its burden to segregate—indeed, it affirmatively refused to try to carry it—and it should therefore be awarded no fees at all. If the facts were less clear on this point, the proper result might be different. But the facts are clear—Transverse's brief demonstrates just how flippant IWS's response to the Court's first fee order is, providing many examples of steps IWS could have taken to meet the segregation requirements of Texas law.[2]

---

[2]*See* Dkt. No. 415-2, which notes that IWS's fee request includes: (1) over $360,000 in fees that were incurred *before* IWS admitted the disclosure that led to Transverse's claim; (2) $60,000 in fees for the deposition of Kleavin Howatt, who offered *no* testimony about any disclosure claims; (3) fees relating to the analysis of Transverse's entire document production, when the disclosure claim production totaled about 240 pages, while the (unrecoverable) contract claim production totaled approximately 3,000,000 million pages; (4) fees for an Iowa suit filed in federal court by IWS that was purely a breach of contract case; (5) 22 of IWS's 628 exhibits relate to the disclosure claims, yet IWS seeks 50% of its total fees for just the disclosure claims; and (6) IWS seeks full fees for review of Transverse's damage expert reports that had placeholders for later discussion of the disclosure claims.

Even the legal argument IWS relies on for its position is flawed. Contending that the same operative facts underlie Transverse's TTLA, misappropriation of trade secrets, conversion, and breach of the NDA claims, IWS says it need not segregate the legal work between these claims. Similarly, it claims that its "access to the Service" breach of contract claim arose from these same facts. But whether the facts are the same is not the test for segregation. "[T]he Texas Supreme Court expressly has held '[i]ntertwined facts do not make [] fees recoverable.' Instead, the focus is whether the legal work performed pertains solely to claims for which attorney's fees are unrecoverable." *Westergren v. Nat'l Prop. Holdings, L.P.,* 409 S.W. 3d 110, 137 (Tex. App.—Houston [14 Dist.], 2013) *aff'd in part, rev'd in part*, 453 S.W.3d 419 (Tex. 2015) (internal citations omitted). Just because the facts of two claims are the same does not relieve a party seeking fees from segregating the *legal work* on each claim, even if based on the same facts. As already noted, segregation was not an impossible task factually, as there were many approaches IWS could have taken to meet its burden.

Accordingly, the Court concludes that because IWS has ***twice*** failed to meet its segregation burden in seeking attorneys fees for the TTLA claim, and the second failure was an obvious knowing failure, the proper exercise of the Court's discretion is to deny IWS's Amended Application for Attorneys' Fees in its entirety.

**B.      IWS's Request for Costs**

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, "costs—other than attorney's fees—should be allowed to the prevailing party." The categories of recoverable costs are set out in

28 U.S.C. § 1920.[3] This list is exhaustive. Courts may decline to award statutory costs but may not award costs not enumerated in the statute. *Tittle v. Raines*, No. 3:99-CV-0478-L, 2002 WL 31757623, at *1 (N.D. Tex. Dec. 3, 2002) (citing *Crawford Fitting Co.*, 482 U.S. at 441–42; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)). "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). "The assessment of costs most often is merely a clerical matter that can be done by the court clerk." *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 656 (7th Cir. 1981). Taxable costs are a fraction of the nontaxable expenses borne by litigants and are intended to be "modest in scope." *Taniguchi,* 566 U.S. at 573; *See* 10 C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2666, pp. 204-206 (2014).

In the Report and Recommendation addressing IWS's first request, the Court found much of the requested $283,810.26 of "costs" unrecoverable pursuant to 28 U.S.C. § 1920, and ordered IWS to submit a Bill of Costs that conformed to the Court's findings "and Local Rule CV-54." Dkt. No. 407 at 25. In response, IWS now requests costs in the amount of $182,199.67.[4] It supports this

---

[3]Transverse argues incorrectly that court costs are determined under Texas law. "The award of costs is governed by federal law. There has been some suggestion that in diversity cases federal courts should look to state law as to costs in deference to the doctrine of Erie Railroad v. Tompkins. With regard to ordinary items of costs, particularly those mentioned in Section 1920 of Title 28, the suggestion clearly is unsound." 10 C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2669, pp. 259-61 (2014).

[4] Notably, IWS failed to file a separate bill of costs as directed, and as required by Local Rule CV-54. Additionally, IWS's documentation requests different totals for its costs in different places, requesting a total of $187,199.67 in its exhibits. Dkt. No. 414-10 at 2.

request with its Revised Bill of Costs, appended to its Motion. Dkt. No. 414-9. The Bill of Costs is supported by documentation, including invoices. Dkt. No. 414-10 to 414-12. IWS requests costs for deposition and trial transcripts; production costs; copying costs; costs for service of summons of subpoenas; and witness fees. Dkt. No. 414-10 at 2.

Transverse objects to the request, making three main arguments: (1) IWS can only prevail on costs proportionate to the claims it is entitled to fees for, which Transverse argues is 21%; (2) IWS's costs are unrecoverable in certain instances; and (3) IWS's costs are exorbitant. An objection shifts the burden to the party seeking costs to show that otherwise authorized costs were necessary. *Jerry v. Fluor Corp.*, 2012 WL 4664423, at *2 (S.D. Tex. Oct. 2, 2012) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)).

1.      **Costs for Deposition and Trial Transcripts**

IWS requests $8,978.40 for transcripts of the trial and $19,306.23 for deposition transcripts. Trial transcripts are traditionally awarded as costs. *See Evert Fresh Corp. v. Pactiv Corp.*, 2011 WL 2672353, at *3 (S.D. Tex. July 7, 2011). In addition, § 1920(2) authorizes recovery of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The party seeking recovery of costs bears the "burden of justifying the necessity of obtaining the depositions . . . at issue." *Delgado v. Alamo Cmty. Coll. Dist.*, 2019 WL 1772317, at *1 (W.D. Tex. Apr. 23, 2019) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)). "[A] district court has great latitude in determining whether a deposition was 'necessarily obtained for use in the case' or was obtained merely for the convenience of the attorney." *Id.* (citing *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363-64 (5th Cir. 1983)). "If, at the time it was

taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." *Fogleman*, 920 F.2d at 285.

IWS's request encompasses the costs of both the print and video depositions for several of the deposed witnesses. Section 1920(2) expressly authorizes recovery of fees for "printed or electronically recorded transcripts." 28 U.S.C. § 1920(2). District courts diverge on their interpretation of § 1920(2) and whether the statute should be read inclusively to allow for the recovery of costs for both print and video depositions or disjunctively to allow for the recovery of only one or the other. *See Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 786 (N.D. Tex. 2014) (collecting cases). "The consensus in the Western District of Texas is to allow the recovery of the costs of videotaped depositions only where the video recordings are actually used at trial," and not to allow the costs of both video and written transcripts. *Delgado*, 2019 WL 1772317 at *1 (collecting cases).

Of the witnesses on which IWS bases its request, six testified live at trial, one testified via video deposition (Darveau), and one (Rowe) did not testify at trial at all. Dkt. No. 264. IWS is therefore entitled to recover the costs of written transcripts ($7,953.03) of the live witnesses (Stork, Stover, Messer, Howatt, Frost and Martinez), but not the video costs ($5,755.00). For the witness who testified via video, the Court will permit the video costs ($1,700.00), but not the written transcript costs ($3,216.95) as his testimony was presented via video. Finally, the deposition costs ($681.70) of the witness who did not testify at trial (Rowe) are not recoverable. The Court will therefore permit recovery of a total of $18,630.98, representing $9,652.58 for deposition costs and $8,978.40 in trial transcript costs.

## 2. ESI Production Costs

Section 1920(4) authorizes recovery of the "costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Under this category, IWS requests $134,623.03 in "Production Costs," made up of various electronic discovery costs. Dkt. No. 414-12 (Ex. E). IWS has submitted a chart entitled "Production Costs" listing requested ESI costs and receipts purportedly detailing the ESI costs. The back-up documentation are three bills from IWS's ESI vendor, Pivotal Guidance, Inc., which contain no specific description of what work the charges cover. This falls short of what is needed to satisfy IWS's burden to prove that the work covered by these bills is the electronic equivalent of compensable exemplification and copying. *See eBay Inc. v. v. Kelora Sys., LLC*, 2013 WL 1402736, at *4 (N.D. Cal. April 5, 2013) ("In sum, with ESI, vaguely-worded vendor invoices and a declaration that such services were necessarily incurred may not satisfy the prevailing party's burden . . ."). Morever, the Supreme Court has recently read the term "costs" in § 1920 narrowly, as excluding recovery of ESI costs, meaning that e-discovery expenses are not authorized under § 1920. *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019). Finally, the submission also fails to demonstrate what the work in the ESI vendors bills was, or that it was "necessarily obtained for use in the case." *Javeler Marine Servs. LLC v. Cross*, 175 F. Supp. 3d 756, 767 (S.D. Tex. 2016). IWS is therefore not entitled to any of the $134,623.03 in requested costs for gathering and production of ESI.[5]

## 3. Witness Fees

IWS requests witness fees in the amount of $15,164.04. These fees fall under § 1920(3), which allows "fees and disbursements for printing and witnesses." Further, 28 U.S.C. § 1821 allows

---

[5]IWS did not object to Transverse's bill of costs, which *did* include ESI costs.

for the recovery of witness fees for both depositions and trial testimony. Specifically, § 1821(a)-(d) allow for $40.00 per day for the witness's trial attendance, a common carrier expense at "the most economical rate reasonably available," a per diem subsistence if an overnight stay is required, and costs for mileage, tolls, parking fees or taxicab fares. *See PODS Ent., LLC v. U-Haul Int'l, Inc.*, 2015 WL 5021668, *1 (M.D. Fla. Aug. 24, 2015).

IWS denominates its requested fees as for "Trial and Prep." Dkt. No. 414-11 at 2. Once again, IWS requests more in costs in this category than what the law allows. For example, it requests witness fees and expenses for the appearance at trial of its own employees. Where a corporate representative is not a controlling officer of the company, many courts have determined the representative is entitled to the statutory attendance fee and subsistence allowance provided for witnesses under 28 U.S.C. § 1821, although only for the day or days he appeared as a trial witness. *See Ezelle v. Bauer Corp.*, 154 F.R.D. 149, 154 (S.D. Miss. 1994) (citing cases). This does not include the cost of the corporate representative's flight, as airfare expense is a cost incurred in the person's capacity as corporate representative. *Id.*; *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 583 (W.D. Tex. 2010), aff'd, 430 F. App'x 359 (5th Cir. 2011). The first witness in this case testified on December 17, 2012, and the final witness testified on December 21, 2012. Both Carey Stover and Shelly Stork were offered as 30(b)(6) witnesses. Each of them testified only one day of trial. Carey Stover offered testimony on December 19, 2012. Shelly Stork testified on December 21, 2012. IWS is therefore entitled to recover witness fees and expenses in the amount of $179.00 for each, for a total of $358.00, and will not allow for travel expenses.

Second, costs related to the time witnesses spent preparing for trial are not recoverable. With regard to Mike Haskins, he traveled to Austin on December 14, 2012 and testified on December 20,

2012. Similarly, Tim Gunderson arrived on December 16 and testified December 20, 2012. He left on December 22, 2012. Maggie Squires testified on December 20th, but arrived on the 16th and left on the 21st. David Frost testified on December 21st but arrived on the 16th and left on 21st. For each witness, the Court finds that expenses are appropriate only for the trial day on which they actually testified. This amount is $3,580. 00 Additionally, the Court finds travel expenses for these individuals may be taxed as costs. This amount is $3,283.80. For trial witnesses, this brings the total allowable costs to $7,221.80.

With regard to deposition witness fees, the Court again finds the fees for Stover and Stork are disallowed. Thus the Court allows $1,802.00 in airfare, $324.00 in lodging, and $175.23 in per diem expenses for the remaining witnesses, for a total of $2,301.23. This brings the total allowable costs for fees for witnesses to $9,523.03.

4. **Printing Costs**

Section 1920(4) permits an award of costs for "exemplification and copies of papers." Under this heading, IWS requests $12,634.28 for copies made in this case. But a condition for recovery of costs under § 1920(4) is that such items were "necessarily obtained" for use in the trial. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). Thus, the Court must make an express finding of fact the expenses were actually necessary. *Id.*; *see also Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 892 (5th Cir.1993). The evidence IWS submits are bills from its attorneys reflecting various costs titled "outside copying," "printing," and "photocopies." Nowhere in its briefing does IWS explain what is included in the various entries or why these copies were necessary. While the attorneys submit affidavits supporting the reasonableness of the requested attorneys' fees, there is no mention in their affidavits of why any of the copying costs were "necessarily obtained" for use

15

at trial. Dkt. No. 414-8. The only entries that specifically identify the use of the copies are $4,085.57 for "trial copies," $141.39 for printing trial exhibits, and charges for printing and binding the record on appeal. The Fifth Circuit has held that "absent pretrial approval of the exhibits . . . a party may not later request taxation of the production costs to its opponent." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995). Further, costs for printing appellate briefs have not, except in admiralty, customarily been permitted as costs. *Scaduto v. Orlando*, 381 F.2d 587 (2nd Cir. 1967). Thus, the only costs IWS is entitled to recover in this category is the $4,085.57 for "trial copies."

### 5. Service of Summons and Subpoenas

IWS requests $663.00 for the costs of service of summons and subpoenas. The Court finds these costs are properly awarded.

## IV. RECOMMENDATION

For the reasons set out above, IWS is not entitled to recover attorneys fees due to its failure to segregate recoverable from unrecoverable fees, and it is entitled to recover $32,902.58 in costs. Accordingly, the undersigned **RECOMMENDS** that the district judge **GRANT IN PART and DENY IN PART** Plaintiff's Amended Application for Attorneys' Fees and Costs (Dkt. No. 414) and **AWARD** IWS $32,903.58 in costs, and no attorneys' fees.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections

to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of February, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE